UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILE NO. _____

| | |
|---|---|
| ELLA BECKHAM, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | **COMPLAINT** |
| BRINK'S, INCORPORATED, : | (Jury Trial Requested) |
| : | |
| Defendant. : | |
| : | |

COMES NOW the Plaintiff, ELLA BECKHAM ("Plaintiff"), by and through her undersigned attorney, and hereby files this Complaint for damages and other legal and equitable relief from Defendant, BRINK'S, INCORPORATED ("Defendant"), for unlawful employment practices in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.* ("ADA") and state law.

**JURISDICTION & VENUE**

1. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 12117(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims, which arise from a common nucleus of operative facts such that they form part of the same case or controversy, pursuant to 28 U.S.C. § 1367.

3. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

1

4. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District, and the unlawful practices complained of occurred within this district.

**PARTIES**

5. Plaintiff (Disabilities – Herniated Disk, Carpal Tunnel, Anxiety, and Rotator Cuff Injury) is and was, at all times relevant to this Complaint, a resident of North Carolina.

6. At all times relevant, Defendant, a Delaware corporation, owned and operated several facilities in North Carolina, including the facility located at 2415 Executive Street, Charlotte, NC 28208, for the purpose of offering secure transportation and cash management services.

7. Defendant is a "person" within the meaning of § 701 of Title VII, 42 U.S.C. § 2000e. Thus, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12111(7).

8. At all relevant times, Defendant has continuously done business in the State of North Carolina and has continuously maintained at least fifteen (15) employees.

9. Defendant is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5), as Defendant has, at all relevant times, continuously engaged in an industry affecting commerce.

**EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES**

10. On or around August 4, 2022, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants engaged in race discrimination, disability discrimination, and retaliation.

11. On January 26, 2024, Plaintiff received her Notice of Rights to Sue from the EEOC.

## STATEMENT OF FACTS

12. From on or around March 29, 2021, until she was constructively discharged by Defendant on August 5, 2022, Plaintiff (Disabilities – Herniated Disk, Carpal Tunnel, Anxiety, and Rotator Cuff Injury) was employed by Defendant as a Cash Logistics Processor at Defendant's facility located at 2415 Executive Street, Charlotte, NC 28208.

13. As a Cash Logistics Processor, Plaintiff was responsible for verifying deposits and preparing orders for Defendant's various customers. Throughout her employment, Plaintiff was routinely required to perform the following tasks: move boxes of cash, deposits, and coins from a cart to a belt; physically count and verify the contents of the boxes; break the boxes down; and carry money to Defendant's cash vault. In addition, Plaintiff would, on occasion, be required to pack, label, and transport paperwork.

14. Plaintiff was well-qualified for her position as she had prior experience as (1) a bank teller at Wachovia Bank (now Wells Fargo), Nations Bank (now Bank of America), and Dana Federal Credit Union, and (2) an employee in the processing department at Wachovia Bank.

15. At all relevant times, Defendant, upon information and belief, employed Nicole Sharpe ("Ms. Sharpe"), as a Shift Lead.

16. At all relevant times, Ms. Sharpe was one of Plaintiff's supervisors. While Plaintiff was at work, Ms. Sharpe exercised authority and control over Plaintiff and Plaintiff's working environment as Plaintiff was required to report to Ms. Sharpe daily for tasks and assignments.

17. At all relevant times, Defendant, upon information and belief, employed Ashley Hatton ("Ms. Hatton") as a Cash Manager.

18. At all relevant times, Ms. Hatton supervised both Plaintiff and Ms. Sharpe. While Plaintiff was at work, Ms. Hatton exercised authority and control over Plaintiff and Plaintiff's working environment.

19. At all relevant times, Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations. Plaintiff never received negative feedback about her performance from her supervisors.

20. Beginning in or around 2020 and continuing to the present, Plaintiff has suffered from both physical and mental disabilities, including (1) carpal tunnel in her arm, (2) a herniated disk in her back, (3) anxiety, and (4) an injury to her rotator cuff.

21. Plaintiff's disabilities cause her extreme physical pain and mental anguish and stress. As a result of her disabilities, Plaintiff is substantially limited in her abilities to perform major life activities, including, but not limited to, performing manual tasks, walking, standing, sleeping, lifting, bending, concentrating, thinking, communicating, and working.

22. During her employment, Plaintiff was required to perform the manual tasks described hereinabove for long periods of time. Because these tasks overlapped with the major life activities in which Plaintiff had limited abilities to perform due to her disabilities, the completion of Plaintiff's manual work tasks was often difficult and painful.

23. Moreover, at the time of her hiring, Plaintiff was hired to work—and agreed to work—second shift, which was an eight-hour shift between the hours of 2 P.M. and 10 P.M.

24. On her first night of employment, Plaintiff worked the eight-hour shift for which she had been hired. However, after her first night, Plaintiff was regularly required to work shifts that lasted for more than ten hours. The changes in Plaintiff's working hours are detailed as follows:

a. On her second night of employment, Plaintiff began work at 2 P.M. but she was not allowed to leave until the following morning. In effect, Plaintiff was required to work the equivalent of two shifts.

b. Instances in which Plaintiff was required to begin work at 2 P.M. and was not able to leave until the following morning continued on a regular basis until Plaintiff was told that she could come in to work at 4 P.M. instead. Even after this change, Plaintiff was still required to stay well into the morning hours of the following day.

c. Upon information and belief, Defendant began having staffing issues at its facility located at 2415 Executive Street, Charlotte, NC 28208.

d. Upon information and belief, because of staff shortages, Defendant altered Plaintiff's hours yet again. Plaintiff was required to begin work at 6 P.M. and told that there was no specific end time. Rather, employees would not be allowed to leave until all boxes had been "taken care of," regardless of whether that meant employees would be working ten- to fifteen-hour shifts.

25. The extended period of time in which Plaintiff was required to work exacerbated the effects of Plaintiff's disabilities, causing for example, "flare ups" of pain in Plaintiff's lower back and numbness in her extremities.

26. Throughout her employment, Plaintiff notified Defendant on various occasions that she had lifting and bending restrictions.

27. On or around February 14, 2022, Plaintiff submitted a note from her doctor describing her disabilities and stating the need for work restrictions. Particularly, Plaintiff was restricted from lifting more than fifteen (15) pounds and bending at the waist.

28. Despite her request, Plaintiff was not provided with any effective and lasting reasonable accommodation. After Plaintiff had first submitted her request, a few employees assisted Plaintiff in carrying her boxes. However, after a few days, Plaintiff was required to lift and carry boxes on her own.

29. On or around February 14, 2022, Plaintiff was approved for intermittent FMLA leave.

30. On or around May 12, 2022, Plaintiff contacted Ms. Hatton and asked if Plaintiff would be able to leave work earlier. Plaintiff made this request to avoid missing days of work due to "flare ups" of pain.

31. On or around May 12, 2022, Ms. Hatton responded to Plaintiff's request, stating that Ms. Hatton could not accommodate those hours because Plaintiff was designated as a fulltime employee and leaving early was not an option. Further, Ms. Hatton advised that Plaintiff would have to go part time and "I have no part time shifts available at this time."

32. On or around June 21, 2022, Plaintiff reported to Ms. Hatton that she had a disagreement with Ms. Sharpe, during which Ms. Sharpe aggressively shoved and threatened Plaintiff.

33. On or around June 21, 2022, Plaintiff submitted another note from her doctor stating the need for further work restrictions. Particularly, Plaintiff was restricted from lifting more than fifteen pounds, bending at the waist, and working for more than eight (8) hours at a time.

34. On or around June 21, 2022, Ms. Hatton unequivocally informed Plaintiff that Ms. Hatton could not accommodate Plaintiff. Particularly, Ms. Hatton stated "I cannot accommodate that[.] I cannot guarantee eight (8) hours so you would have to resign due to me not having any part time positions available. Full Time is 10 plus hours and has been with [B]rinks."

35. At no point in time did Ms. Hatton inform Plaintiff that she would be looking into her abilities to accommodate Plaintiff's requests. Additionally, Ms. Hatton never inquired further about accommodations for the Plaintiff.

36. On or around June 23, 2022, Plaintiff submitted a request for FMLA leave and was approved for a continuous leave of absence.

37. After the continuous leave of absence was approved, Plaintiff informed the Claim Analyst at New York Life that she would remain on leave until a position with an 8-hour work shift became available.

38. Plaintiff was never informed by Ms. Hatton or any other designee of any positions coming available that would accommodate her restrictions prior to her constructive dishcarge.

39. Furthermore, given the previous interactions with Ms. Sharpe, despite her being terminated, Plaintiff still felt unsafe returning after her period of leave ended.

40. Despite multiple requests for accommodations, Plaintiff was never provided any type of written decision or opportunity to participate in the interactive process within a reasonable amount of time designated by the Americans with Disabilities Act.

41. Upon information and belief, similarly situated non-disabled colleagues of Plaintiff were allowed by Defendant to work shifts limited to 8 hours.

42. Upon information and belief, similarly situated non-disabled colleagues of Plaintiff were allowed by Defendant to complete less voluminous and strenuous work assignments than Plaintiff.

43. Plaintiff was also subjected to disparate treatment as evidenced by the following incidents:

    a. Plaintiff repeatedly faced difficulties regarding her seating arrangements at work. On multiple occasions from January 2022 onward, she arrived to find no available seats and, upon taking a seat that became available, was instructed to move to a different area designated for the bank she was assigned to.

    b. Conversely, Angela (LNU), a Female/Caucasian colleague (non-disabled), was not subjected to similar relocations, regardless of her seating choice. Additionally, Angela was consistently permitted to depart at the end of her scheduled shift and would delegate remaining tasks to other colleagues, justifying her actions by her part-time status, despite adhering to her scheduled hours.

    c. Furthermore, upon Plaintiff's transition to the second shift, she was not informed by Defendant that her new schedule required 10-hour workdays, yet was expected to comply with these hours, demonstrating a lack of consistency in the enforcement of policies.

    d. Ms. Hatton informed the Plaintiff on multiple occasions that her shift did not have a designated end time, contrary to the practice afforded to other non-disabled employees of the Defendant, who were permitted to leave at their pre-scheduled times.

44. On August 5, 2022, the Plaintiff submitted her Letter of Resignation via email to Ms. Hatton and Ms. Toccara Price. This action was necessitated by the Defendant's disparate treatment, refusal to accommodate her reasonable request, failure to engage in the interactive process as required by law, and Ms. Hatton's prior mandate to resign.

8

Case 3:24-cv-00412-FDW-SCR     Document 1     Filed 04/24/24     Page 8 of 15

45. At the time of Plaintiff's resignation, she was never informed that Defendant could accommodate her work restrictions. Additionally, no extension of time had been agreed upon by her to provide this information to the Plaintiff.

### **FIRST CAUSE OF ACTION**
### **Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*** 
### **Disability Discrimination—Failure to Accommodate**

46. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

47. Plaintiff suffers from disabilities, including a herniated disk, carpal tunnel, anxiety, and a rotator cuff injury. Plaintiff's disabilities substantially limit her abilities to perform major life activities, including, but not limited to, performing manual tasks, walking, standing, sleeping, lifting, bending, concentrating, thinking, communicating, and working.

48. Plaintiff is a qualified individual as she, with or without reasonable accommodation, can perform the essential functions of Cash Logistics Processor position she held until her constructive discharge.

49. Defendant was aware of Plaintiff's disabilities because Plaintiff had been approved for FMLA and had submitted a reasonable accommodation request to her supervisor, Ms. Hatton.

50. Plaintiff requested an accommodation. A reasonable accommodation existed that would have allowed the Plaintiff to perform essential functions of the job.

51. The Defendant unreasonably delayed a reasonable accommodation. The Defendant failed to reasonably accommodate Plaintiff.

52. As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant because of disability discrimination and failure to reasonably accommodate disability.

53. The above-referenced actions have created an intolerable hostile work environment. The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against Plaintiff.

54. The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such conduct.

55. The Defendant, through Plaintiffs managers and supervisors, has engaged in, directed or ratified conduct and denied and frustrated Plaintiffs efforts to obtain relief under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act) and Section 717 of the Civil Rights Act of 1964, as amended.

56. Because of the actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been denied her rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Rehabilitation Act.

57. As a result of the foregoing, Plaintiff has been damaged. Those damages include, loss of a non hostile working environment; loss of career and professional opportunities; a lower performance appraisal; payment of attorneys' fees and legal costs; harm to her professional reputation; and humiliation, degradation, embarrassment, severe emotional

10

Case 3:24-cv-00412-FDW-SCR   Document 1   Filed 04/24/24   Page 10 of 15

distress and aggravation of her medical conditions. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

## SECOND CAUSE OF ACTION
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*
Disability Discrimination—Hostile Work Environment**

58. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

59. Defendants created a hostile work environment based on Plaintiff's disability in violation of 42 U.S.C. § 12101.

60. Defendants created a hostile work environment for the Plaintiff by imposing work hours that exceeded those agreed upon at the time of her employment acceptance, fully aware of the Plaintiff's several diagnosed conditions.

61. Despite the Plaintiff's request for a reasonable accommodation to adjust her work hours, the Defendants continued to mandate excessive hours. This was in contrast to non-disabled employees who were permitted to adhere to their predetermined schedules.

62. Additionally, Ms. Hatton frequently engaged in demeaning behavior towards the Plaintiff by jestingly stating that her shift had no definitive end time, thereby exacerbating the hostile environment.

63. Ms. Hatton explicitly told Plaintiff to resign based on request for an accommodation.

64. Furthermore, the Defendants failed to engage in the requisite interactive process to address the Plaintiff's accommodation needs. Notably, there was a significant delay in response; approximately six months elapsed from the Plaintiff's initial request for accommodation to the point of her constructive discharge, during which time the

Defendants did not provide any written communication regarding the status of her request. This failure and the cumulative discriminatory practices significantly impaired the Plaintiff's working conditions, compelling her resignation.

### THIRD CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

65. Plaintiff re-alleges and re-incorporates the above paragraphs as if fully stated forth herein.

66. To state a claim for intentional infliction of emotional distress, plaintiff must allege facts sufficient to show the following three elements: (1) extreme and outrageous conduct, (2) which is intended to cause or with reckless indifference to the likelihood that they will cause, (3) severe emotional distress to another. *Dickens v. Puryear*, 302 N.C. 437, 453 (1981).

67. Ms. Hatton and Defendants acts of disparate treatment as described herein were extreme and outrageous.

68. Ms. Hatton performed this conduct with intent to cause or with reckless indifference to the likelihood that it would cause Plaintiff's severe emotional distress, as evidenced by Ms. Hatton's continued hostility of Plaintiff and influence on Defendant's scheduling.

69. Ms. Hatton's 'take it or leave it' (quit or deal with it) attitude, coupled with her position of authority within the Defendant's organization, created a hostile work environment. This environment subjected the Plaintiff to ongoing fear of harassment, stress, and potential retaliation, undermining her conditions of employment and forcing her to continue working under adverse circumstances.

70. Plaintiff suffered severe emotional distress and mental anguish as result of the hostile work environment and adverse employment actions.

71. Plaintiff was diagnosed with and treated for anxiety stemming from her workplace.

72. The stress endured by Plaintiff was so severe that a reasonable man could not be expected to endure it.

73. At all relevant times, Ms. Hatton was acting within the scope of her employment. Thus, Defendants are vicariously liable under the doctrine of *respondeat superior*.

74. As a direct and proximate result of the conduct described herein, Plaintiff has suffered and is entitled to recovery of damages to be determined at a trial of this matter.

### DAMAGES

75. As a result of the aforementioned conduct, Plaintiff has sustained permanent injury to her reputation; economic injuries; emotional and mental injuries; violation of her integrity; loss of valuable time; embarrassment, humiliation, compensatory damages; punitive damages; and all other injuries set forth above.

WHEREFORE, Plaintiff, Ella Beckham, respectfully requests prays:

That the Court empanel a jury to hear her cause;

1. A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq.;

2. Actual compensatory damages pursuant to 42 U.S.C. § 12117, including but not limited to, lost wages, lost job benefits, physical and mental suffering, in an amount undetermined, but believed to be in excess of $75,000.00;

3. Costs, disbursements, and attorneys' fees pursuant to 42 U.S.C. § 12117;

4. All damages which Plaintiff has sustained because of Defendant's conduct, including back pay, benefits, general and specific damages for lost compensation, and job benefits

she would have received but for Defendant's retaliatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

5. Exemplary and punitive damages in an amount commensurate with Defendant's ability and to deter future malicious, reckless, and/or intentional conduct;

6. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

7. Pre-judgment and post-judgment interest, as provided by law;

8. That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

9. Granting Plaintiff other and further relief as this Court finds necessary and proper.

10. Plaintiff also seeks injunctive relief, including, but not limited to:

11. Training regarding the prohibition against retaliation for engaging in protected activity for all of Defendant's supervisors;

12. Training regarding the prohibition against discrimination for engaging in protected activity for all of Defendant's supervisors;

13. Training of all employees regarding retaliation, including the reporting procedures for reporting such retaliation, conducted by reputable outside vendors;

14. Supervisory discipline up to and including termination for any employee who engages in discrimination based upon disability, including any employee who engages in retaliatory practices; and

15. Monitoring by the Court or a federal agency to ensure that Defendants comply with all injunctive relief.

16. Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

This the 24th day of April, 2024.

/s/M. Anthony Burts II
M. Anthony Burts II
Attorney for Plaintiffs
N.C. State Bar No.: 49878
2520 Sardis Road North, Suite 234
Charlotte, NC 28227
Telephone (704) 751-0455